THE STATE OF NORTH DAKOTA EX REL. FLAHERTY *v.* HANSON, SHERIFF OF GRAND FORKS COUNTY.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH DAKOTA.

No. 47. Submitted November 29, 1909.—Decided January 17, 1910.

A State cannot place a burden on a lawful taxing power of the United States; nor can it place a burden upon the person paying a tax to the United States solely because of such payment and without reference to the doing by such person of any act within the State and subject to its regulating authority.

A State cannot so exert its police power as to directly hamper or destroy a lawful authority of the United States.

A state statute requiring the holder of a Federal liquor license to perform duties in conflict with the requirement of the Federal statute is an exercise of power repugnant to the Constitution and cannot be enforced; and so held as to chap. 189, General Laws of North Dakota, 1907, requiring the holder of such a license to file and publish a copy thereof.

*Quære,* whether the payment to the United States of the special liquor tax and taking a receipt therefor creates a *prima facie* presumption that the person holding the receipt is engaged in the liquor business.

16 N. Dak. 347, reversed.

THE facts, which involve the constitutionality of a statute of North Dakota, are stated in the opinion.

*Mr. Edward Engerud, Mr. Daniel B. Holt, Mr. John S. Frame* and *Mr. George A. Bangs* for plaintiff in error:

The act complained of, chap. 189, Gen'l Laws, 1907, of North Dakota is not a regulation for sale of liquor and is not a proper exercise of the police power of the State. It relates only to the holders of Federal licenses.

Even if such was the intent of the legislature, effect cannot be so given to it unless the language is plain and unambiguous. Courts cannot imagine an intent and twist the language so as to substitute what the court thinks the law should have been

instead of what it is. *Ruggles v. Illinois*, 108 U. S. 526; *United States v. Fisher*, 2 Cranch, 358; *United States v. Wiltberger*, 5 Wheat. 95; *United States v. Hartwell*, 6 Wall. 395.

The act does not regulate the liquor business in the State because it does not apply to all persons in the State.

The act deprives the state court of the power to decide who are liquor dealers within the meaning of the state law. It affects only those dealers who obey the Federal law and post their receipts.

The incriminating facts under the statute are the possession of a Federal tax receipt and failure to register and publish it.

The statute is an attempt to exercise police power inherent in the State, but it cannot be enforced without resort to the Federal statutes. This situation is foreign to our form of government. *Butchers' Union v. Crescent City*, 111 U. S. 746; *Ableman v. Booth*, 21 How. 506; *United States v. Tarble*, 13 Wall. 397; Cooley, Const. Law, 399; *Thorpe v. Railroad Co.*, 27 Vermont, 140.

The act is an unlawful interference with Federal regulations.

The fact that the state legislature intended by the law in question to make the enforcement of the prohibition laws of the State more easy and certain cannot save it if in truth it interferes in any manner with a subject over which the Federal Government has control. *Bowman v. Chicago, &c.*, 125 U. S. 475; *Rhodes v. Iowa*, 170 U. S. 412.

There can be no question made of the right of Congress to raise revenue for the maintenance of the Federal Government by taxing those who engage in the sale of liquors, and it is equally within the power of Congress to prescribe the conditions under which that tax shall be paid, and the notice which the person paying it shall give to the public of the fact of such payment.

While the State is not prohibited from also taxing the persons who engage in that business because of the fact that Congress has seen fit to tax them it cannot lay upon those persons

duties and obligations different from those imposed by Congress.

The sovereignty of a State extends to everything which exists by its own authority or is introduced by its permission, but does not extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Prigg* v. *Pennsylvania*, 16 Pet. 539; *Houston* v. *Moore*, 5 Wheat. 1

To the same effect also see *Farmers' &c. Bank* v. *Dearing*, 91 U. S. 29; *Easton* v. *Iowa*, 188 U. S. 220; *Ohio* v. *Thomas*, 173 U. S. 276; *Sturgis* v. *Crowninshield*, 4 Wheat. 122; *Patterson* v. *Kentucky*, 97 U. S. 501; *Webber* v. *Virginia*, 103 U. S. 344; *Commonwealth* v. *Petty*, 29 S. W. Rep. 291; *Cranson* v. *Smith*, 37 Michigan, 309; *Hollida* v. *Hunt*, 70 Illinois, 109; *Commonwealth* v. *Felton*, 101 Massachusetts, 204; *Crittenden* v. *White*, 23 Minnesota, 24; *People* v. *Kennedy*, 38 California, 147; *State* v. *Pike*, 15 N. H. 83.

Besides being an unwarranted usurpation of authority over transactions and relations between the Federal Government and its citizens, the act interferes with and impedes the operations of the Federal laws relating to internal revenue.

There was no appearance or brief for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

By § 18 of the act of February 8, 1875, ch. 36, 18 Stat. 307, as amended by § 4 of the act of March 1, 1879, ch. 125, 20 Stat. 327, 333, a special tax of twenty-five dollars is imposed on retail dealers in liquors, as therein defined, and a tax of twenty dollars on a retail dealer in malt liquors. By Rev. Stat., §§ 3232 and 3233 a person is forbidden to engage in or carry on any trade or business made subject to a special tax until the tax has been paid, and it is made the duty of one engaging in a trade or business on which a special tax is imposed by law

to register with the collector of the district "his name or style, place of residence, trade or business, and the place where such trade or business is to be carried on." In addition, Rev. Stat., § 3239, as amended by the act of February 27, 1877, ch. 69, 19 Stat. 240, requires every person engaging in any business, made liable to a special tax, except tobacco peddlers, to place and keep conspicuously in his establishment or place of business all stamps denoting the payment of said special tax, and penalties are affixed for non-compliance. So also any one carrying on a business made liable to a special tax without payment of the tax is subject to fine and imprisonment under § 16 of the act of 1875.

By other sections of the Revised Statutes it is provided as follows:

"SEC. 3240. Each collector of internal revenue shall, under regulations of the Commissioner of Internal Revenue, place and keep conspicuously in his office, for public inspection, an alphabetical list of the names of all persons who shall have paid special taxes within his district, and shall state thereon the time, place, and business for which such special taxes have been paid.

*    *    *    *    *    *    *    *

"SEC. 3243. The payment of any tax imposed by the internal-revenue laws for carrying on any trade or business shall not be held to exempt any person from any penalty or punishment provided by the laws of any State for carrying on the same within such State, or in any manner to authorize the commencement or continuance of such trade or business contrary to the laws of such State or in places prohibited by municipal law; nor shall the payment of any such tax be held to prohibit any State from placing a duty or tax on the same trade or business, for State or other purposes."

The State of North Dakota on March 13, 1907 (Laws No. Dak., 1907, p. 307), enacted a law requiring the registration and publication of any receipt, stamp or license, showing the payment of the special tax levied under the laws of the United

States upon the business of selling distilled, malted and fermented liquor. Briefly, the law provides as follows: A notice of the particulars contained in the receipt or license and other details respecting the place where the tax receipt or license is posted, etc., is required to be made for three weeks in official newspapers, and the fees for publication are declared to be the same "as allowed by law for the publication of other legal notices." The holder of the receipt or license is also required to place and keep posted, at all times, with the government tax receipts or license, an affidavit of the fact of publication and the obtaining of such license, etc., together with a copy of the notices or advertisements. A duly authenticated copy of the tax receipt or license is required to be filed with a named official, to whom a ten-dollar filing fee is to be paid, and such official is required to publish, in certain official newspapers, the first week in each month, a list of all such tax receipts or licenses filed during the previous month, such notice to be published one week in each newspaper.

Upon complaint made before a committing magistrate, for the county of Grand Forks, State of North Dakota, R. E. Flaherty, by the name of R. C. Flarty, was held to answer upon a charge of neglecting to register and publish a government receipt for the payment of an internal revenue tax on the business of a retail dealer in malt liquors. Having been committed to the custody of the sheriff, Flaherty unsuccessfully made application for a writ of *habeas corpus* to a judge of a state District Court. Afterwards a similar application was made to the Supreme Court of the State and the writ was granted by that court, but, upon hearing, the writ was quashed. *State ex rel. Flaherty* v. *Hanson,* 16 No. Dak. 347. This writ of error was thereupon prosecuted.

The detention complained of was asserted to be illegal upon the ground that the law upon which the prosecution was based was repugnant to the state and Federal Constitutions. We, of course, have to deal solely with the claim of alleged repugnancy to the Constitution of the United States.

The law of North Dakota, which we have already summarized, is in the margin.[1]

The state court was of opinion that the law made the person

---

[1] An act providing for the publication and registration of special tax receipts or licenses from the Government of the United States to sell distilled, malt and fermented liquors, issued to persons in North Dakota, the payment and collection of registration fees and publication fees, regulating the posting and exhibiting of such tax receipts or licenses, prescribing the duties of officials and owners and lessors of property in relation thereto, prescribing penalties for failure to perform the duties prescribed and other regulations pertaining to the sale of intoxicating liquors.

Be it enacted by the Legislative Assembly of the State of North Dakota:

§ 1. Liquor license. Tax receipt must be registered.—Every receipt, stamp or license showing payment of the special tax levied under the laws of the United States upon the business of selling distilled, malt or fermented liquor, issued to or held by any person, firm or corporation in this state shall be registered and published as in this act required.

§ 2. Notice to be published. Contains what.—Immediately upon posting or displaying the special tax receipt or license mentioned in said section one of this act as required under government regulations, it shall be the duty of the person in whose name such tax receipt or license is issued, to cause to be published for three successive weeks in the official newspaper of the county and for the same period in the official newspaper of the city, if within an incorporated city, a notice which shall contain the following information: Name of person to whom the government tax receipt or license is issued; date of special tax receipt or license; description of property where said tax receipt or license is posted, and, if within an incorporated city, the number of the lot and block and street number and setting forth specifically the room, building or place where said tax receipt or license is posted; the name of the owner and the name of the lessor of the property in which said tax receipt or license is posted. Upon discontinuance of business or removal of the special tax receipt or license mentioned in section one of this act to another building or place, a similar notice containing the information prescribed in this section, shall be published in the same manner as prescribed herein, and setting forth further the fact of removal, giving date and description of place to which such removal is made as fully as in the original notice.

who had paid the special United States tax and taken a receipt
therefor subject to the burdens which the law imposed, wholly
without reference to whether such person so paying the tax

§ 3. *Copy of receipt filed with auditor.*—It shall be the further duty
of any person to whom a tax receipt or license from the government
of the United States is issued, as mentioned in section one of this act,
to file a duly authenticated copy of the same before or immediately
upon posting, if in an incorporated city with the city auditor, other-
wise with the county auditor of the county and pay a fee for the filing
thereof of ten dollars, which fee shall be turned into the general fund
of the city or county as the case may be.

§ 4. *Auditor publishes list of licenses.*—The city auditor, if in an
incorporated city, or county auditor, if not within an incorporated
city, shall be required to publish in the official newspaper of the city
and each of the official newspapers of the county the first week in each
month a list of all such tax receipts or licenses filed during the previous
month, such notice to be published one week in each newspaper.

§ 5. *Fees for publication. Copy posted.*—The fee for publication
of notices required under this act shall be the same as allowed by law
for publication of other legal notices and the publisher may require
the fee for such publication to be paid in advance. Upon the expira-
tion of the publication required by this act the publisher or manager
of the newspaper in which said notice is published shall make an
affidavit of publication with a copy of the advertisement attached
thereto, together with the copy of notice or advertisement referred
to herein shall be posted and remain posted at all times with the tax
receipt or license referred to in section one of this act.

§ 6. *Owner of premises must publish, when. Penalty for failure.*—
In case the person to whom the tax receipt or license referred to in
section one of this act shall be issued, shall fail to cause to be published
the notice required by this act, it shall be the duty of the owner or
lessor of the premises whereon or wherein the tax receipt or license
from the government of the United States referred to in section one
of this act shall be posted, to cause such advertisement to be pub-
lished as in this act required and if such owner or lessor shall know-
ingly fail to do so he shall be guilty of a misdemeanor.

§ 7. *Duty of officers.*—It shall be the duty of every sheriff, deputy
sheriff, constable, mayor, marshal, police judge and police officer of
any city or town having knowledge of any violation of the provisions
of this act to notify the state's attorney of the fact of such violation
and to furnish him the names of any witnesses within his knowledge

and taking the receipt had posted the same, as required by the laws of the United States, or done any act within the State. The court said (p. 353):

"The argument of petitioner's counsel to the effect that the act applies only to those persons who have complied with the federal statute with reference to posting the receipts for the payment of such tax is, we think, unsound. While section 2 of the act, when given a literal construction, and without considering the other portions of the act, would appear to sustain petitioner's contention, in this respect, we think it apparent that when the whole act is construed together the legislative intent that the same shall apply to all who have *paid* the federal tax is apparent and such intent must be given effect."

Considering the contention that the sole purpose was to burden the person who made a payment of a tax to the United

---

by whom such violation can be proven. If any such officer shall fail to comply with the provisions of this section he shall be guilty of a misdemeanor and upon conviction, in addition to the punishment therefor prescribed by law, shall forfeit his office. For failure or neglect of official duty in the enforcement of this act any of the city or county officers herein referred to may be removed by civil action.

§ 8. Duty of county auditor.—It shall be the duty of the county auditor of each county to apply to the internal revenue department of the government of the United States the first week in each month for a list of all special tax receipts or licenses mentioned in section one of this act issued to persons within his county, naming the persons, date and places, and the same shall be immediately published one week in each of the official newspapers of the county and city. The cost of procuring such information, upon filing of a duly verified voucher, shall be paid by the county as other county expenses are paid.

§ 9. Penalty.—Failure on the part of any person to comply with the provisions of this act shall constitute a misdemeanor.

§ 10. Emergency.—Whereas, it is desirable that the publicity required by this act shall begin as soon as possible, an emergency exists and this act shall be in force from and after its passage and approval.

Approved March 13, 1907. (Laws of Nor. Dak., 1907, p. 307.)

States, and thus in effect hinder the making of such payments, the court said (p. 350): ''

"Such is not the scope nor intent of the act, as we construe it; but, on the contrary, the obvious purpose sought to be accomplished by its enactment was to furnish knowledge to the public and all concerned of the fact that the persons who have paid such tax to the government are or may become engaged in the business of selling intoxicating liquors contrary to the laws of this state. Its purpose, in other words, was solely to furnish knowledge to aid in the enforcement of our statute against the unlawful traffic in intoxicating liquors.

\*      \*      \*      \*      \*      \*      \*      \*

"The legislature, in enacting this law, merely did what it had the unquestioned right to do under the police power of the state. Such power is very broad and it is limited only by the constitution and laws of the United States and the constitution of this state. That the legislature has the right, within the police power of the state, to provide that the possession of an internal revenue tax receipt for the payment of the government tax upon the occupation of retail dealer in fermented and distilled liquors shall constitute *prima facie* evidence that the possessor is violating, or has violated the prohibition law of the state, is too well settled to admit of serious doubt. 23 Cyc. 255, and cases cited. Yet such a law is no less free from the objection urged by petitioner's counsel than is the act in question. If such a law is constitutional, then why cannot the legislature also enact a law making it a public offense for any citizen of the state to procure such a receipt and neglect or refuse to furnish a public record thereof, and to give the most complete publicity to the fact of its issuance? Such a law would certainly have a tendency to aid in the better enforcement of the law against such illegal traffic, and we are aware of no provision, either in the federal Constitution or statutes or in the constitution of the state, which directly or impliedly prohibits such legislation."

As thus interpreted, the law was held not to be repugnant to

the Constitution of the United States, and to be but a lawful exercise of the police power of the State to regulate the traffic in liquor within the State.

The errors assigned insist that the statute, as thus construed, is repugnant to the Constitution of the United States: First, because, under the guise of the exertion of the police power of the State, the law really imposes a burden directly upon the exertion by the Government of the United States of its lawful power of taxation, and because, even if this be not the case, the conditions and requirements of the statute are so in conflict with the act of Congress concerning the payment of the tax and the issuance of the receipt as to amount to a direct burden upon the constitutional power of Congress to tax.

The propositions, which are in substance one and the same, we think are well founded. Under the construction placed upon the statute by the court below we see no escape from the conclusion that it immediately and directly places a burden upon the lawful taxing power of the United States, or, what is equivalent thereto, places the burden upon the person who pays the United States tax, solely because of the payment of such tax and wholly without reference to the doing by the person of any act within the State which is subject to the regulating authority of the State. That the attempted exertion of such a power is repugnant to the Constitution of the United States is so elementary as to require nothing but statement. We place in the margin,[1] however, a few of the numerous cases in which the principle has been announced or recognized.

---

[1] *M'Culloch* v. *Maryland*, 4 Wheat. 316, 405, 406, 436; *Gibbons* v. *Ogden*, 9 Wheat. 1, 210; *Osborne* v. *Bank of United States*, 9 Wheat. 738; *Brown* v. *Maryland*, 12 Wheat. 419, 448, 449; *Willson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245, 251; *The License Cases*, 5 How. 504, 573, 574, 579; *Sinnott* v. *Davenport*, 22 How. 227; *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, 584; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283; *Missouri, K. & T. R. Co.* v. *Haber*, 169 U. S. 613, 625, 626; *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 667; *Knowlton* v. *Moore*, 178 U. S. 41, 59; *Plummer* v. *Coler*, 178 U. S. 115, 117; *Reid* v. *Colorado*, 187 U. S. 137, 151.

But if the mere form in which the burdens imposed by the statute be disregarded and their essence be considered, nevertheless we are of the opinion that the statute must be held to be repugnant to the Constitution of the United States. This follows, because it is clear that in principle a State may not so exert its police power as to directly hamper or destroy a lawful authority of the Government of the United States. Here, again, the doctrine is elementary, and finds clear and consistent expression in the cases previously cited. Its potentiality, however, as applied to the case in hand, is so pointedly illustrated by the case of *United States* v. *Snyder*, 149 U. S. 210, that we briefly refer to that decision. In that case a Circuit Court of the United States had refused to enforce, in favor of the United States, a lien upon real estate for taxes under the internal revenue laws, on the ground that the lien, or assessment for the tax, had not been recorded in the mortgage records for the parish of Orleans, where the real estate in question was situated, as required by the laws of Louisiana, and that the proceeding to enforce the lien had not been brought within the period fixed by the state law. The Circuit Court, therefore, in effect, had held that it was in the power of the State to burden, control or regulate the right of the United States to assess and collect taxes under its constitutional power of taxation. In deciding that this view was unsound it was said (p. 214):

"The power of taxation has always been regarded as a necessary and indispensable incident of sovereignty. A government that cannot by self-administered methods, collect from its subjects the means necessary to support and maintain itself in the execution of its functions is a government merely in name. If the United States, proceeding in one of their own courts, in the collection of a tax admitted to be legitimate, can be thwarted by the plea of a state statute prescribing that such a tax must be assessed and recorded under state regulation, and limiting the time within which such tax shall be a lien, it would follow that the potential existence of the gov-

ernment of the United States is at the mercy of state legislation.

"Moreover, it scarcely seems necessary to look beyond the Constitution itself for a decisive reply to the question we are now considering. The 8th section of the 1st article declares that 'the Congress shall have power to lay and collect taxes, duties, imposts and excises, . . . but all duties, imposts and excises shall be uniform throughout the United States.' The power to impose and collect the public burthens is here given in terms as absolute as the language affords. The provision exacting uniformity throughout the United States itself imports a system of assessment and collection under the exclusive control of the general government. And both the grant of the power and its limitation are wholly inconsistent with the proposition that the States can by legislation interfere with the assessment of Federal taxes, or set up a limitation of time within which they must be collected."

Undoubtedly, as suggested by the court below, there are decisions of state courts holding that in a proceeding to enforce a penalty or to punish for a violation of a state law as to the sale of liquor the payment of the special United States tax and taking of a receipt therefor by the defendant may be offered in evidence, and creates a *prima facie* presumption that the person paying the tax and holding the receipt was engaged in the business of selling liquor. Without in anywise intimating an opinion as to the soundness of the decisions thus referred to, and assuming only for the purpose of the argument their correctness, we yet fail to see how in any respect they can be considered persuasive as to the compatibility of the statute here under consideration with the Constitution of the United States.

Nor is there merit in the contention that the cases of *Allen* v. *Riley,* 203 U. S. 347; *Woods* v. *Carl,* 203 U. S. 358, and *Ozan Lumber Company* v. *Union County Bank,* 207 U. S. 251, tend to support the proposition that the statute in question was a valid exercise of the police power of the State and not a

direct burden upon the taxing power of the Government of the United States. In the cases relied upon it was but held that certain state statutes regulating the sale within a State of patent rights or patented articles were valid because but a reasonable exertion of the police powers of the State over acts done in the State, and were hence not inconsistent with the legislation of Congress over the subject. But that, as we have stated, is not the character of the legislation here involved. Indeed, testing the provision of the law under consideration by the criterion of reasonableness which was applied in the cases relied upon, it becomes manifest that the act here in question is directly antagonistic to the legislation of Congress concerning the subject with which the state statute deals, since that statute adds onerous burdens and conditions in addition to those for which the act of Congress provides, and which burdens are, therefore, inconsistent with the paramount right of Congress to exert, within the limits of the Constitution, an untrammelled power of taxation.

*Reversed and remanded.*

The Chief Justice, Mr. Justice McKenna and Mr. Justice Holmes dissent.