**UNITED STATES v. OWLETT et al.**
No. 1238.

District Court, M. D. Pennsylvania.
July 7, 1936.

John Dickinson, Asst. Atty. Gen., Frederick V. Follmer, U. S. Atty., of Scranton, Pa., and John S. L. Yost and Hugh B. Cox, Sp. Assts. to the Atty. Gen., for the United States.

George Wharton Pepper, William A. Schnader, James Alan Montgomery, Jr., and Bernard G. Segal, all of Philadelphia, Pa., for respondents.

JOHNSON, District Judge.

This is a bill in equity instituted by the United States of America to enjoin the respondents, an investigating committee created by resolution of the Senate of the commonwealth of Pennsylvania, from conducting any investigation into the organization, administration, and functioning of the Works Progress Administration in Pennsylvania.

The bill of complaint avers that the United States of America is a sovereign government having jurisdiction and authority over all matters relating to the Works Progress Administration, a federal agency; that the proposed and threatened actions of the respondents in attempting to make an investigation of the organization, administration, and functioning of the Works Progress Administration in Pennsylvania are contrary to and in obstruction of the proper governmental functions of that agency and of the laws of the United States of America; and that unless respondents are restrained the United States of America will suffer irreparable injury for which there is no adequate remedy at law. The bill prays that the respondents be enjoined from conducting any investigation into the organization, administration, and functioning of the Works Progress Administration in Pennsylvania as proposed by the resolution of the Senate of the commonwealth of Pennsylvania; that respondents be restrained forthwith and without notice;

that writs of subpœna issue to respondents, commanding them to appear and answer; and that thereupon a preliminary injunction issue, pendente lite.

Upon motion the court forthwith granted an order restraining the respondents from carrying on any investigation of the Works Progress Administration and requiring them to appear on June 17, 1936, and show cause why the preliminary injunction should not issue according to the prayer of the bill.

The respondents appeared on June 17, 1936, and filed their answer, admitting certain allegations of the bill and denying others. Certain exhibits and affidavits were introduced on behalf of the United States of America, without objection. Reply affidavits were offered on behalf of the respondents, and upon objection the court reserved ruling on their admission. Thereupon oral arguments were heard and written briefs filed.

Upon due consideration of the bill, answer, exhibits, and affidavits, after hearing oral arguments of counsel, and examination of the written briefs, the court arrives at the following:

## I. Findings of Fact.

1. That pursuant to the authority vested in the President of the United States of America under the "Emergency Relief Appropriation Act of 1935," approved April 8, 1935, Public Resolution No. 11, 74th Congress (15 U.S.C.A. § 728 note), the President of the United States of America on May 6, 1935, established the Works Progress Administration by Executive Order No. 7034.

2. That administrative units of the Works Progress Administration were created in each of the states, including Pennsylvania.

3. That Edward N. Jones was duly appointed and has been acting as Administrator of the Pennsylvania unit of the Works Progress Administration.

4. That moneys of the United States of America, formally appropriated, have been allocated to the various units of the Works Progress Administration, including the Pennsylvania unit.

5. That Edward N. Jones has been authorized to disburse such funds in carrying out the provisions of the Emergency Relief Appropriation Act of 1935, and that he has set up various agencies through which the funds allocated to the Pennsylvania unit are being disbursed.

6. That accountings for said funds are made to certain agencies of the United States of America.

7. That the Works Progress Administration unit in Pennsylvania is a governmental unit of the United States of America.

8. That the United States of America is a sovereign government and has jurisdiction and authority over all matters relating to the Works Progress Administration.

9. That the Senate of the commonwealth of Pennsylvania at an Extraordinary Session of 1936, passed Resolution No. 1 as follows:

"Whereas The Democratic Administration at Washington in establishing the Works Progress Administration promised the State of Pennsylvania along with the other states that all employables on the relief rolls at the time of the creation of said Administration would be given work relief and

"Whereas the Works Progress Administration has been in operation in Pennsylvania for a considerable period of time and

"Whereas There are still on the direct relief rolls in Pennsylvania upwards of one hundred and seventy thousand cases a very large percentage of whom are employables and

"Whereas the report of certain members of the Joint Legislative Committee Investigating Public Relief has disclosed that the Works Progress Administration in Pennsylvania is functioning as an arm of the Guffey-Earle-Lawrence Democratic State Administration and being used for the purpose of building up a political machine rather than for the alleviation of unemployment and

"Whereas The Governor of this Commonwealth has demanded that the Legislature impose an additional burden of seventy million dollars on our people to provide relief largely for the employables for the next nine months and

"Whereas It is believed that an investigation of the Works Progress Administration as it is now functioning in Pennsylvania will disclose that the proper and economic administration thereof would provide for the most if not all of those now on the direct relief rolls thru relieving the taxpayers of Pennsylvania from this addi-

tional burden which the Governor proposes to impose upon them now therefore be it

"Resolved that the President Pro Tempore of the Senate is hereby authorized to appoint a committee of five members of the Senate whose duty it shall forthwith be to make a searching and impartial investigation of the organization administration and functioning of the Works Progress Administration in Pennsylvania to ascertain (a) whether the same if administered in a proper and economical manner would relieve this Commonwealth from further taxation for unemployment relief or materially lessen the same (b) in what respect if any the present administration is abusing the powers prerogatives and privileges imposed in it and (c) to investigate such other facts and circumstances as may be deemed necessary in order to enable the General Assembly to measure the extent of any revenue it should raise to provide for those employables which could not be provided for through a proper administration of the Works Progress Administration

"Resolved That the said committee shall have power to issue subpœnas under the hand and seal of its chairman requesting and commanding any person or persons to appear before them and to answer any such questions touching matters properly being inquired into by the committee and to produce such books papers records and documents as the committee may deem necessary. Such subpœnas may be served upon any person and shall have the force and effect of subpœnas issued out of the courts of this Commonwealth. Each member of said committee shall have the power to administer oaths and affirmations to witnesses appearing before the committee. Any person who shall wilfully neglect or refuse to testify before said committee or to produce any papers books records or documents shall be subject to the penalties provided by the laws of the Commonwealth in such cases

"Resolved That said committee shall make a report to the Senate now in session as early as possible."

10. That in accordance with the above Resolution the President pro tempore of the Senate of the commonwealth of Pennsylvania appointed G. Mason Owlett, John R. K. Scott, George L. Reed, and Charles Staudenmeier, respondents herein, as a committee to investigate the organization, administration, and functioning of the Works Progress Administration in Pennsylvania.

11. That the committee met and appointed G. Mason Owlett chairman thereof.

12. That until the issuance of the restraining order by this court on June 3, 1936, the committee had been functioning, had issued certain subpœnas, and was intending to issue further subpœnas in accordance with the purposes of the Senate Resolution requiring persons to give testimony affecting the administration of the Pennsylvania Works Progress Administration unit to ascertain the facts specified by the Senate Resolution.

13. That on the 27th day of May, 1936, the committee under the hand and seal of its chairman subpœnaed John H. Rankin, director of districts 4 and 5, of Works Progress Administration in Pennsylvania; E. Kaye Hunter, assistant director of districts 4 and 5 of Works Progress Administration in Pennsylvania; Edward R. Yarnelle, supervisor of employment in districts 4 and 5, of Works Progress Administration in Pennsylvania; and Henry T. Siebert, personnel officer for districts 4 and 5, of Works Progress Administration in Pennsylvania, to appear "before the Senate committee investigating the W. P. A. in Pennsylvania" on May 29, 1936, at Philadelphia to testify in the investigation by the committee under Senate Resolution No. 1, and to bring with them "all W. P. A. payrolls in Districts 4 and 5 from January 1, 1935 to date, including all employes taken from S. E. R. B. rolls, together with all addresses and all applications signed by above employes and card or record of their previous work qualifications, and all letters or writings or memoranda of endorsement for employment of aforesaid employes."

14. That the said employees are on the pay roll of the United States of America; that their salaries are paid by check on the Treasury of the United States of America, issued by a disbursing office of the United States of America; and that they are not subject to the control of any official other than their superior officers in the Federal Works Progress Administration.

15. That Harry L. Hopkins, Administrator of Works Progress Administration, advised John H. Rankin, director of districts 4 and 5 in Pennsylvania, of Works Progress Administration, by telegram on May 29, 1936, that the policy of the Works

Progress Administration forbids any of its employees to disclose information acquired in the course of their employment to non-employees, and that these instructions specifically cover the documents requested by the subpœnas served upon him and Messrs. Edward R. Yarnelle, E. K. Hunter, and Henry T. Siebert, by the committee of the commonwealth of Pennsylvania investigating the Works Progress Administration.

16. That on June 2, 1936, Harry L. Hopkins, Administrator of the Works Progress Administration, issued general letter No. 36 advising all state works progress administrators that no officer or employee of the Works Progress Administration shall furnish any information or make available any official document or copy thereof to any person, except persons having official business with the Works Progress Administration.

17. That in answer to the subpœnas of the committee, the employees refused to appear before the Senate investigating committee and by letters addressed to the committee, assigned as reasons therefor that the instructions of the Works Progress Administration forbid the submission of any records of the Works Progress Administration to any one not employees thereof; that it would not be in the public interest to absent themselves from their official duties; that upon advice of counsel, the committee is without jurisdiction to compel them as federal employees to appear before the committee in response to the subpœnas.

18. That these letters were transmitted to the committee by Charles D. McAvoy, United States Attorney for the Eastern District of Pennsylvania, who informed the committee by letter that the Works Progress Administration is prepared to co-operate with the States and to supply legislative bodies thereof with such information as may be necessary to assist them properly to design measures to meet their relief requirements.

19. That unless restrained respondents will perform the duties imposed upon them by the Senate Resolution No. 1.

20. That exhibits and affidavits were introduced on behalf of the United States of America, without objections, and were received by the court, and that reply affidavits were offered on behalf of the respondents, and objection to their admission was made on the ground that the affidavits were irrelevant.

From the foregoing facts, the court arrives at the following:

## II. Conclusions of Law.

1. That the Works Progress Administration unit in Pennsylvania is a governmental unit of the United States of America, and all matters relating to the Works Progress Administration are under the jurisdiction and authority of the United States of America.

2. That the actions of the respondents in attempting to make an investigation into the organization, administration, and functioning of the Works Progress Administration in Pennsylvania, pursuant to Resolution No. 1 of the Senate of the commonwealth of Pennsylvania, are contrary to and in obstruction of the proper governmental functions of the United States of America.

3. That the respondents have no jurisdiction to investigate the organization, administration, and functioning of the Works Progress Administration in Pennsylvania, pursuant to Resolution No. 1 of the Senate of the commonwealth of Pennsylvania.

4. That the United States of America has no adequate remedy at law against said actions of the respondents, and will suffer irreparable damage unless the respondents are restrained from investigating the organization, administration, and functioning of the Works Progress Administration in Pennsylvania pursuant to Resolution No. 1 of the Senate of the commonwealth of Pennsylvania.

5. That the bill in equity for an injunction is the proper remedy here.

6. That a preliminary injunction should issue restraining the respondents, the committee appointed pursuant to Resolution No. 1 of the Senate of the commonwealth of Pennsylvania, from conducting any investigation into the organization, administration, and functioning of the Works Progress Administration in Pennsylvania as proposed by the said Resolution No. 1 of the Senate of the commonwealth of Pennsylvania.

7. That the objection to the admission of the respondents' reply affidavits should be and is sustained.

### III. Discussions.

The Works Progress Administration unit in Pennsylvania is a governmental unit of the United States of America. The Works Progress Administration was created by Executive Order No. 7034 of the President of the United States of America pursuant to the Emergency Relief Appropriation Act of 1935, being Public Resolution No. 11 of the 74th Congress of the United States of America. It functions with funds from the federal treasury; its disbursements are made by federal officers; its employees are federal employees under federal supervision, paid from the federal treasury; accountings are made to the federal government; its projects are under federal control and supervision. The Works Progress Administration is a federal agency, and the United States of America is a sovereign government, having jurisdiction over the matters relating to the Works Progress Administration. This principle is asserted in the bill of complaint and admitted by the respondents in their answer.

■ The investigation by the respondents is an interference with the proper governmental function of the United States of America. The complete immunity of a federal agency from state interference is well established. Tennessee v. Davis, 100 U.S. 257, 25 L.Ed. 648; Van Brocklin v. State of Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845; see, also, Dobbins v. Erie County, 16 Pet. 435, 10 L.Ed. 1022; Buchanan v. Alexander, 4 How. 20, 11 L. Ed. 857; Tarble's Case, 13 Wall. 397, 20 L.Ed. 597; Flaherty v. Hanson, 215 U.S. 515, 30 S.Ct. 179, 54 L.Ed. 307. This principle of immunity from state control or interference applies to official papers and records of the United States of America, Boske v. Comingore, 177 U.S. 459, 20 S. Ct. 701, 44 L.Ed. 846; Ex parte Sackett (C.C.A.) 74 F.(2d) 922; 25 Op. Atty. Gen. 326; and prevents a state from obstructing or interfering with employees of the United States of America in the discharge of their official duties, whether or not there is any expressed statutory provision for immunity. Osborn v. Bank of U. S., 9 Wheat. 738, 6 L.Ed. 204. This principle of immunity is well stated by the Supreme Court of the United States in Tennessee v. Davis, supra, wherein, at page 262 of 100 U.S., 25 L.Ed. 648, it is said:

"As was said in Martin v. Hunter (1 Wheat. [304] 363 [4 L.Ed. 97]), 'the general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers.' It can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members. The legislation of a State may be unfriendly. It may affix penalties to acts done under the immediate direction of the national government, and in obedience to its laws. It may deny the authority conferred by those laws. The State court may administer not only the laws of the State, but equally Federal law, in such a manner as to paralyze the operations of the government. And even if, after trial and final judgment in the State court, the case can be brought into the United States court for review, the officer is withdrawn from the discharge of his duty during the pendency of the prosecution, and the exercise of acknowledged Federal power arrested.

"We do not think such an element of weakness is to be found in the Constitution. The United States is a government with authority extending over the whole territory of the Union, acting upon the States and upon the people of the States. While it is limited in the number of its powers, so far as its sovereignty extends it is supreme. No State government can exclude it from the exercise of any authority conferred upon it by the Constitution, obstruct its authorized officers against its will, or withhold from it, for a moment, the cognizance of any subject which that instrument has committed to it."

■■ Since the Works Progress Administration is admittedly a federal agency, that agency, its employees and records, must have the same immunity which is enjoyed by all other agencies and instrumentalities of the United States of America, such as the post office, the Army or the Navy. The fact that the conduct of the Works Progress Administration might have some indirect effect upon the fiscal problems of the commonwealth of Pennsylvania af-

fords no basis for interference, control, or investigation by a committee appointed by authority of the Senate of the commonwealth of Pennsylvania. Every federal agency must, by the very system of our dual form of government, function within the various states and necessarily affect matters therein. The fact that the federal government, through the Works Progress Administration, is co-operating with the commonwealth of Pennsylvania in alleviating unemployment within the state, or the fact that its officers have promised or assured officials of the commonwealth of Pennsylvania that the Works Progress Administration would relieve that state of caring for a certain number of its employables on its relief rolls, does not give to the commonwealth of Pennsylvania any supervision, authority, control, or investigatory powers over the Works Progress Administration.

■ Nor does the fact that the commonwealth of Pennsylvania has the right given to it to propose a project or furnish materials to secure a project to be carried out by the Works Progress Administration, give to it any control over the Works Progress Administration. The contribution by the state is purely voluntary to secure federal aid, and the project is nevertheless carried out completely by the federal agency without interference from the state.

■ The attempt by the respondents, a committee appointed by the Senate of a sovereign state, to investigate a purely federal agency is an invasion of the sovereign powers of the United States of America. If the committee has the power to investigate under the resolution, it has the power to do additional acts in furtherance of the investigation; to issue subpœnas to compel the attendance of witnesses and the production of documents, and to punish by fine and imprisonment for disobedience. When this power is asserted by a state sovereignty over the federal sovereignty, it is in contravention of our dual form of government and in derogation of the powers of the federal sovereignty. The state having the power to subpœna may abuse that power by constantly and for long periods requiring federal employees and necessary federal records to be before an investigating committee. This power could embarrass, impede, and obstruct the administration of a federal agency. This asserted authority on the part of a state sovereignty is far different from the right of individuals or groups of individuals to conduct an investigation. They are not armed with the process of a sovereign state with power to invade the sovereign rights of either a state or the United States of America; their individual rights are protected by constitutional guarantees of freedom of speech, of assembly, and of petition.

■ The respondents have no jurisdiction to investigate pursuant to Resolution No. 1. The investigatory power of a legislative body is limited to obtain information on matters which fall within its proper field of legislative action. Commonwealth v. Costello, 21 Pa.Dist.R. 232; Shelby v. Second National Bank of Uniontown, 19 Pa.Dist. & Co.Ct.R. 202; McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 50 A. L.R. 1. Resolution No. 1 of the Senate of the commonwealth of Pennsylvania limits the investigating committee to make an "investigation of the organization, administration and functioning of the Works Progress Administration in Pennsylvania." Under the resolution the committee has no authority to investigate anything else. The respondents, constituting the investigating committee, clearly have no jurisdiction to make the investigation proposed by Senate Resolution No. 1, since the subject-matter of the investigation, the Works Progress Administration, a federal agency, is a matter over which the Senate has no legislative power, and the information sought cannot enable it to legislate on the subject of the investigation; the organization, administration, and functioning of the Works Progress Administration in Pennsylvania.

■ The United States of America has no adequate remedy at law and will suffer irreparable damage unless the respondents are restrained by injunction.

The preservation of the sovereign powers of the United States of America is a matter of vital public interest, and though the United States of America may suffer no pecuniary damage, it is not powerless to protect its sovereign powers. The Supreme Court of the United States in the case of In re Debs, 158 U.S. 564, 584, 15 S.Ct. 900, 906, 39 L.Ed. 1092, said: "Every government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other,

and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all and to prevent the wrongdoing of one, resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court." See, also, Hopkins Savings Association v. Cleary, 296 U.S. 315, 56 S.Ct. 235, 80 L.Ed. 251, 100 A.L.R. 1403. The assertion by respondents of the right to investigate a purely federal agency and the attempt of respondents to pursue that asserted right is sufficient to show to this court that the sovereignty of the United States of America is being invaded, and that the United States of America will suffer irreparable damage unless respondents are restrained.

No federal agency can properly function if its employees are being constantly called from their duties; if its records are constantly kept from official use; if its employees are subjected to illegal fine and imprisonment. There is no adequate remedy at law to protect against such damage.

The suggestion that federal employees could refuse to obey the subpoenas, or seek relief by habeas corpus from imprisonment for disobedience, is no relief. Although these remedies might in a measure protect the individuals, they do not in any degree protect the United States of America from an invasion of its sovereignty or from vexatious interruptions of its functions. If the United States of America were left to such remedies, it would be subjected to confusion and a multiplicity of suits. The respondents, unless restrained, are free to resort to different courts of co-ordinate jurisdiction within the commonwealth of Pennsylvania in attempts to punish federal employees for disobedience to subpoenas, or to compel attendance of witnesses and the production of documents. A court of equity will not subject the United States of America to a multiplicity of suits or compel federal officers and employees to incur the risk of fine and imprisonment to protect the United States of America from an illegal invasion of its sovereignty. In Cleveland v. Cleveland City Ry. Co., 194 U.S. 517, at page 531, 24 S.Ct. 756, 761, 48 L.Ed. 1102, the Supreme Court of the United States said: "Respecting the contention that the case presented by the record was not within the jurisdiction of a court of equity, it suffices to say that, in view of the controversies, confusion, risks, and multiplicity of suits which would necessarily have been occasioned by the resistance of the complainant to the enforcement of the ordinance, and in view of the public interests and the vast number of people to be affected, the case was one within the jurisdiction of a court of equity." The bill in equity for an injunction is the proper remedy to secure the relief sought.

Under the law of this case as stated in the above opinion, the objection to the admission of respondents' reply affidavits on the ground of irrelevancy is sustained.

A decree granting a preliminary injunction, restraining the respondents, the committee appointed pursuant to Resolution No. 1 of the Senate of the commonwealth of Pennsylvania, from conducting any investigation into the organization, administration, and functioning of the Works Progress Administration, in Pennsylvania, pursuant to said Resolution No. 1 of the Senate of the commonwealth of Pennsylvania, may be submitted and will be made as prayed for in accordance with the above opinion.