WILLIAMS v. COMMISSIONERS OF IREDELL CO.

(Filed April 14, 1903.)

1. SUBMISSION OF CONTROVERSY—*Actions — Judgments—Prayer for Judgment—The Code, Secs. 567–569.*

   In an action submitted without controversy no prayer for judgment is necessary.

2. INTOXICATING LIQUORS—*Licenses—Purchase Tax — Taxation— Acts 1901, Ch. 9, Sec. 83, and Ch. 7, Sec. 58.*

   Under Acts 1901, Ch. 9, Sec. 83, and Ch. 7, Sec. 58, a liquor purchase tax should be assessed on the amount paid for the liquor and is not subject to deduction by the amount of the internal revenue tax.

ACTION submitted without controversy between D. J. Williams and the Commissioners of Iredell County, heard by Judge *Thos. A. McNeill,* at January Term, 1903, of the Superior Court of IREDELL County. From a judgment for the defendant the plaintiff appealed.

*L. C. Caldwell,* for the plaintiff.
*Armfield & Turner,* and *W. G. Lewis,* for the defendant.

CLARK, C. J. This is an action submitted without controversy under The Code, Sections 567 and 569 with proper affidavit, as there required, that the controversy is real and that the proceedings are in good faith to determine the rights of the parties.

Upon the "facts agreed" it appears that the plaintiff, a retail liquor dealer, in July, 1902, returned to the County Commissioners the total amount of his purchases of liquor for the preceding six months, as required by Section 83, Chapter 9, Laws 1901, to be $400, being at the rate of 15c. per gallon, which would make his purchase tax, at 2 per centum each for State and County, sixteen dollars. The defendants, the said county commissioners, declined to receive said returns and summoned the plaintiff before them, as authorized to do by

Section 58, Chapter 7, Laws 1901, who stated that he had "estimated the whiskey at 15c. per gallon, which was the cost of the same less $1.10 U. S. Internal Revenue tax paid thereon by the distiller from whom he had purchased the same, and which he had deducted." It further appeared from the "facts agreed" that "the price paid to the distiller by the plaintiff was $1.25 per gallon, which amount includes the $1.10 U. S. Internal Revenue tax which was paid to the government by the plaintiff for the stamp to be placed upon each gallon of whiskey purchased from the distiller, the stamp tax being made out in the distiller's name and upon his withdrawal papers." By orders of the County Commissioners, the clerk of said board was ordered to add the $1.10 per gallon to the total purchases by plaintiff as returned by him, and to turn over the assessment thus corrected to the sheriff for collection. This increased the plaintiff's taxes from $16 to $133.33. He demanded the addition should be struck off but the defendants refused to do so.

There is no prayer for judgment, and inded it is not required in this form of proceeding. Even when a complaint is filed, it is held immaterial if the prayer for relief is omitted, or if the wrong relief is asked, for the court will give any relief to which the facts alleged and proved entitle the party to receive. Clark's Code (3 Ed.) Sec. 233 (3) and cases cited. The plaintiff evidently desired a mandamus to compel a correction of the tax list, which was within the jurisdiction of the court, but his Honor held that the facts agreed entitled him to no relief and that the sheriff should proceed to collect the $133.33 the amount of tax assessed against him by the county commissioners.

It being agreed that "the price paid to the distiller by the plaintiff was $1.25 per gallon" the purchase tax was due upon that sum. It may be inferred from the facts agreed that the $1.10 was advanced on the whiskey to enable the distiller

to pay the United States tax, but that is immaterial. The distiller could not sell and deliver the whiskey till he had paid the government tax of $1.10 under penalty of an indictment in the Federal Court. U. S. Rev. Stat., 3251 (as amended) ; see also sections 3259-87. The purchaser did not have possession of, nor title to the whiskey and power to sell it till he paid, or agreed to pay, whether at the time or part in advance, $1.25 per gallon, and that being the purchase money, to enable him to get it the purchase tax is payable thereon, *i. e.* 5 cents per gallon to State and County combined instead of 6-10 of one cent per gallon actually paid. We were told in the argument, that this evasion of the State Revenue Law has been widely prevalent. If so, there are large amounts of revenues of which the State and Counties have been illegally deprived and which it was and is the duty of the proper officers to collect, for clearly in such cases less than one eighth of the tax legally due has been paid.

It was argued to us that the tax of 2 per cent., if levied upon the $1.25, would be a tax upon the United States governmental agency. But $1.25 was the purchase price, and it is immaterial to the purchaser and to the State how much of this was for material, how much for labor, or how much for tax, or whether the purchaser advanced money for either or all three purposes. Most articles sold by merchants are enhanced in price by the tariff, either because actually paid when the goods are imported (or added by reason of the fact that the seller can compel a higher price on account of the tariff), but no merchant could deduct the amount of the tariff from the total of his purchases in returning his purchase tax.

Laws 1901, Chapter 9, Section 83, provides: "Every person who shall buy for the purpose of selling spirituous, vinous or malt liquors shall, in addition to the *ad valorem* tax on his stock and the license tax levied in sections 71 and 72, pay as a *license tax* two per centum on the total amount

of his purchases in and out of the State, for cash or credit, whether such person shall purchase as principal or as agent, or through a commission merchant." And section 102 of the same chapter provides: "In any case where a specific license tax is levied for carrying on any business, trade or profession, the county may levy the same tax and no more; provided, no provision to the contrary is made in the section levying the specific license tax."

The State being entitled to two per cent. on the purchase price of $1.25 per gallon, the county was entitled to levy the same, making four per cent. as was here levied.

No Error.