(85 South. 901)

No. 23273.

INDUSTRIAL LUMBER CO. v. ODEN, Tax Collector, et al.

(May 3, 1920. Rehearing Denied June 30, 1920.)

*(Syllabus by the Court.)*

1. Taxation ☞347, 350 — Constitutional and statutory rule for valuation is at "just and true value," not exceeding the "actual cash value"; original cost no criterion of value; pre-war cost no criterion of value of lumber.

The constitutional and statutory basis of taxation is the "just and true value," not exceeding "the actual cash value" (the two terms being, for the purposes of most cases, the equivalents of each other), of the property to be taxed, and that value, within the meaning of the law is the price, in cash, for which the property could be sold, free of all incumbrances, in the ordinary course of business, otherwise than at forced sale; from which it inevitably follows that the original cost has no necessary bearing upon the assessment of property for the purposes of taxation, and that such assessments can be in no wise affected by bookkeeping entries which the owner may see fit to make, charging off, on account of depreciation, actual or assumed, an arbitrary percentage of the valuation which he chooses to place upon his property, and still less, if that be possible, can such assessment of lumber, upon the yard of a sawmill, be affected by a deduction of say 25 per cent. from the book valuation, made upon the theory unsupported by proof, that stocks of merchandise are assessed at invoice values, and not at their values where found. In particular cases, no doubt, the price for which property is sold may aid in determining its value for the purposes of assessment, because the circumstances of those cases are such as to indicate that the price obtained might be obtained again, and represents the just and true value of the property in public estimation; but the cost of lumber on a mill yard, made from logs which the owner may have bought, and sawed in a mill and by machinery erected and purchased, at pre-war prices, affords no criterion of the value of such lumber at this time, nor did it afford such criterion in January, 1917.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Actual Cash Value.]

2. Taxation ☞347—Statutory rule for determining value of property must be followed.

The general rule for determining the value of property for the purposes of taxation is prescribed by statute, and must be complied with, unless in particular cases shown to be impracticable.

3. Taxation ☞319(2)—Mode adopted to determine value presumed to be correct.

It has long been settled in the jurisprudence of this court, and in other jurisdictions, that the assessment of property for taxes, and the modes adopted for determining its value, will be presumed by the courts to be correct until the taxpayer makes satisfactory proof to the contrary.

Appeal from Fifteenth Judicial District Court, Parish of Allen; Winston Overton, Judge.

Suit by the Industrial Lumber Company against R. E. Oden, Tax Collector, and others,. for review of an assessment. From a judgment reducing the assessment, defendants appeal. Judgment set aside, injunction thereon dissolved, assessment complained of sustained, judgment for the tax collector, and suit dismissed.

A. V. Coco, Atty. Gen., and Randall H. Odom, of Kinder (Harry P. Sneed, of New Orleans, of counsel), for appellants.

A. P. Pujo, of Lake Charles, for appellee.

Statement of the Case.

MONROE, C. J. Plaintiff sues for the reduction of its assessment for the year 1917. It is shown that it made a return of its property for assessment, was afforded an opportunity, of which it availed itself, to object to and protest against an increase of valuation, brought its suit for reduction within the delay prescribed by law, and the only question which is here discussed is whether the officers charged with that function have made an assessment authorized by law, or one which is excessive and should be reduced. The return relied on by plaintiff was as follows:

1. Sawmills, etc. ............................ $379,199.00
2. Lumber on yard ......................... 291,402.00
3. Tramroad, etc. ........................... 65,000.00

The valuations as made by the board of state affairs and adopted by the parish authorities were:

1. Sawmills, etc. ........................... $450,000.00
2. Lumber on yard ......................... 501,570.00
3. Tramroad, etc. ........................... 69,600.00

The trial judge ordered the items 1 and 3 to be reduced to the amounts returned by plaintiff, and the item 2 to be reduced to $394,568, and defendants have appealed.

In the course of the proceedings in the district court, plaintiff paid to the tax collector $18,303.02, as the amount admitted by it to be due, and obtained an injunction prohibiting the seizure of its property for the further amount claimed upon the higher valuation.

To sustain the burden of proof required to show that the assessment complained of is excessive in amount, plaintiff called B. F. Smith, its assistant vice president; Joseph Muth, its vice president; Z. B. Broussard, one of the inspectors of the board of. state affairs; and Conrad Cole, parish assessor. Mr. Smith testified that he made the return in question, from the books of the plaintiff, and as directed by the vice president, but that he had no personal knowledge of the value of the property. That information having been developed on his cross-examination, he was re-examined by plaintiff's counsel as follows:

"Q. Your duties, Mr. Smith, are to carry out Mr. Muth's instructions, as an executive of the company? A. Yes. Q. And, if suggested, you render property for taxation, pay taxes, and attend to matters of that kind? A. Yes. Q. And, in the performance of those duties, you receive your instructions from the executive of the company as to the assessment of property and tender in payment of taxes on the property of the company in this parish? A. Yes. Q. As to the condition of the mills, or the value of lumber, or the market, or the market prices, that does not come within your duties? A. No."

Mr. Muth testified that, in rendering plaintiff's property for the taxes of 1917, Mr. Smith received his information from him (Muth) and acted under his instructions; that plaintiff has three mill plants, one at Elizabeth, and two at Oakdale; and further as follows (his testimony as to basis of the return for taxation of the Elizabeth plant being applicable, also, to the Oakdale plants), to wit:

"The valuation on the Elizabeth plant is based on its cost, less depreciation charge of 10 per cent. per year. The 10 per cent. does not mean that 10 per cent. of the original value was taken off each year; it means that 10 per cent. of the book value each year is

taken off. Suppose the plant is worth $1,000: At the end of the first year, $100 would be taken off as depreciation; at the end of the second year, $90 would be taken off; this system of depreciation being used with the idea that, at the end of the life of the timber, the plants will have depreciated to a figure that will represent a junk value."

Plaintiff's counsel then propounded the question and received the answer:

"Q. Then this aggregate valuation of those plants, rendered in one item of $379,199, was that the actual cash value on January 1, 1917? A. We so considered them. Our books are kept and our figures are made with the idea of exhibiting to our stockholders the real value of the property owned by them."

Being asked how he arrived at the amount, $291,402, returned as the value of the lumber on the yard, the witness answered:

"A. That involves quite a procedure; our idea of the value of lumber on our yard is based, primarily, on its cost."

He then makes a statement in regard to the proportions of rough and dressed lumber usually on the yard, the cost of manufacturing the rough into the finished product, and concludes as follows:

"We consider the percentage of lumber, shipped, as we say, from the saw—that is, in its rough, green state—and apply against it its cost, and we apply against the lumber on the yards its cost, and by this means we arrive at the approximate average value of lumber on the yard of about $11.80 [meaning $11.80 per M feet], as well as I remember, based on the cost of that particular lumber. From that value, because of a statement of Mr. Thomas, of the state board of affairs, made in Alexandria, that, in making assessments on stocks of merchandise, the state board had, practically, adopted the policy of using invoice values, less discount of 25 per cent., we considered that lumber was as much merchandise as any other article of commerce, and, using the same theory, we took 25 per cent. from what we had considered was our cost, arriving at our rendered valuation."

Some of the testimony of Mr. Muth is not intelligible to us, and some appears conflicting; it is all predicated upon the idea that the valuation of property for the purposes of taxation should be based upon the original cost after deducting therefrom 10 per cent. per annum for depreciation, and 25 per cent. because of the statement attributed to Mr. Thomas.

The following additional excerpt from his testimony may conduce to a better understanding of the actual situation, and of the quantity and quality of the proof upon which plaintiff relies for the carrying of its burden, to wit:

"The lumber on the yard and in the mill is all lumber in all stages of manufacture. It may have left the sawmill a week or more previous to the time of its inventory. It may be green, and require 90 days to season before it is a commercial product, *even the sort of lumber that goes into dimensions and boards.* Approximately *95 per cent. of the lumber that goes into the yards—while it is all put on the yards rough—must ultimately be dressed into various shapes and forms before it becomes a marketable product. Of the lumber that goes on the yard, possibly, 65 per cent. is sold in the form of what we know as boards and dimensions."* (Our italics.) "Q. What percentage, if any, of your product, in 1916, had a market value when placed on the yard in its rough state, raw material? A. In the form that it was on the yard, I would say that not more than 5 per cent. was in marketable shape."

His cross-examination reads in part as follows:

"Q. Mr. Muth, do you attend to the sales of this lumber, or do you know the value or price you get for this lumber? A. Yes. Q. What do you get for this lumber that is on the yard? A. We do not sell it in that form. Q. You do not sell any of it in the rough? A. We sell none of it in the form that it is on the yard. Q. What do you get for lumber that you finish and sell? A. At what period of the year? Q. In the beginning of 1917, the 1st day of January? A. That, also, depends entirely upon what you sell. I do not give this answer avoidably, but that question cannot be answered directly. The average selling price received for lumber by the Industrial Lumber Company during the year 1916 was $15.62. That covered the entire year. During the month of December, 1916, the price had risen; the actual selling price, for sales shipped during December, 1916, was $16.62. Q. On the 1st of January, 1917, what was the price?

A. For any particular day it is impossible for me to tell you; I have given you the nearest date to the 1st of January, 1917, that I could, which is the month of December. Q. Can you give it for the month of January, 1917? A. I could have given it, but was not expecting to be called on for these figures. Q. Was it any greater, or was it less? A. It was possibly 50 per cent. higher, but I do not mean by that that the lumber on the yards sold for that price. Q. What do you carry that lumber on your books at? A. It was carried on our books at the cost price. Q. But it was actually worth more than that? A. No. * * * Q. What is lumber worth in the logs, Mr. Muth, the timber? A. I have heard recently [the testimony was given in May, 1918] of $35 per thousand being paid for timber standing in the woods. Q. Then board measure would run about 30 per cent above that? A. Yes. * * * Q. Then logs worth $35 per thousand, *plus* 30 per cent., board measure, would give you the true value of your lumber on the yard, would it not? A. If you added to it the cost of bringing the logs to the mill and cost of manufacture, you would probably get the value."

The tramroad and its equipment having been valued by plaintiff at $65,000, increased to $69,600, Mr. Muth was asked whether $65,000 was the actual value of the property on January 1, 1917, and he answered, "we so considered it" which was as near as he was able to come to proving that the assessment was erroneous.

The testimony of Broussard and Cole we regard as negligible; that of Broussard being to the effect that it appeared to him that, in raising the assessment on the tramroad, the board may have included some property otherwise assessed, and that of Cole merely giving some details in regard to the assessment, as completed, one of them being that he had assessed the timber at $16 per M, and that the boards (of state affairs and reviewers) had reduced it to $15 per M.

### Opinion.

[1] Article 225 of the Constitution, amended as proposed by Act 168 of 1916, declares (inter alia) that:

"Property shall be taxed as may be directed by law: Provided, that * * * the assessment of all property shall never exceed the actual cash value thereof."

And Act 140 of 1916—being "An act to carry out articles 225 and 226 of the Constitution; to create a board of state affairs," etc.—after providing for the organization of that board, etc., declares:

"Sec. 10 [p. 334]. That it shall be the duty of the board, and it shall have power and authority:

"1. To assess, for state purposes, all taxable property. * * *

"2. To fix and equalize the value of said property, * * * not to exceed its actual cash value, leaving to the lawful authorities of each parish or other subdivision * * * full liberty to assess taxes on, and fix valuation at, less than actual cash valuation as they deem fit. * * *

"Sec. 13. * * * The state board, in fixing the valuation for state purposes, shall not be bound by the valuation fixed by the assessor for local purposes, but shall, in all cases, truly endeavor to arrive at a just and true valuation of the property for state purposes."

Act 211 of 1918, § 13, p. 392 (which provides that the actual cash value fixed by the board of state affairs for state purposes shall be the actual cash value for all purposes), having become a law after the assessment here in question was made, and contested, has no bearing upon the case.

The lawmaker has relieved us of the necessity of discussing the various possible meanings that might be attributed to the term "actual cash value," as used in connection with assessments for the purposes of taxation, by declaring (in Act 170 of 1898, § 91, p. 386):

"That the following rules for the taxation of persons and property are hereby established:
*      *      *      *      *

"6. The words 'actual cash value' or 'actual cash valuation,' shall be held to mean a price that any piece of real estate or personal or movable property would sell for cash, in the ordinary course of business, free from all incumbrances, other than by forced sale."

In the face of the plain declarations, thus quoted, of the organic and statutory law, it cannot, in reason, be denied that the constitutional basis of taxation is the just and true value, not exceeding the actual cash value (the two terms being, for the purposes of most cases, equivalents), of the property to be taxed, or that the actual cash value, within the meaning of the law, is the price, in cash, for which the property would sell free from all incumbrances in the ordinary course of business, otherwise than at forced sale, from which it inevitably follows that the original cost has no necessary connection with, or bearing upon, the assessment of property for the purposes of taxation, and that such assessments can be in no wise affected by bookkeeping entries which an owner may see fit to make, charging off, on account of depreciation, actual or assumed, an arbitrary percentage of the valuation which he chooses to place upon his property; and still less, if that be possible, can an assessment be affected by a deduction of say 25 per cent. from what may then be left of such valuation, upon the ground that the owner has heard, or read, that merchandise is assessed at the invoice price, and not at its value where found. The law leaves no room for argument in favor of such propositions, and reason furnishes them no support. In particular cases, no doubt, the price for which property is sold may aid in determining its value for the purposes of taxation, because the circumstances in those cases are such as to indicate that the price obtained might be obtained again, and represented the just and true value of the property in public estimation; but the cost of lumber, sawed from logs which the owner may have bought long ago, at a low price, and sawed in a mill and by machinery purchased at pre-war prices, affords no criterion of the value of such lumber to-day, when the timber may be worth $35 per M, in the standing trees, or of its value in January, 1917, when plaintiff's witness admits that it was worth, in the market, $16.62 per M, plus probably 50 per cent. increase in value about that time, and when the mill with its machinery may have been worth much more than was paid for it; it being a most significant circumstance in this case that no one has pretended to testify that the property here in question was not worth fully the amount, or more than the amount, for which it was assessed. Mr. Smith disclaimed all knowledge of its value, and Mr. Muth testified only to what he, or "we," *considered its value, upon the basis of its cost, less the arbitrary deductions to which he testifies.* (Our italics.)

We are informed, through the briefs of counsel, that plaintiff has instituted a suit, similar to this, praying for a reduction of its assessments for 1918, that the case is now on appeal in this court, and that, by agreement, the decision in this case is to be accepted as determinative of the other as well. In the other case, our Brother of the district court assigned his reasons in writing and they are reproduced as part of the brief filed on behalf of plaintiff. The following excerpt therefrom covers the point upon which the decision rests, to wit:

"A great deal of the lumber on the yard, at the time named, was not in merchantable shape, and, in reality, had no known market value. It had to be further manufactured before it could be placed in the market. This was the policy of the mill, because, by keeping the lumber in that shape, it would be in a better position to fill orders, in accordance with specifications, as the orders were received. In the case decided last year, under the circumstances named, the court ruled that the actual cash value of the lumber was the actual cash value of the stumpage, plus the cost of manufacture up to the point that the lumber was manufactured. It so ruled because plaintiff could replace the lumber at that expenditure, just as it would rule that the value of a stock of merchandise would be what the merchant could replace it, and not what he would retail it, at. The court

was of opinion, also, that the value placed by the taxing authorities would, if allowed to stand, include values not earned on the 1st day of January, but which would be earned during that or some other years."

[2] We are unable to concur in the view thus expressed by our learned Brother, for the reasons:

(1) That the general rule for determining the actual cash value of property for the purposes of taxation is fixed by statute, and, as so fixed, must be complied with, unless in particular cases shown to be impracticable.

(2) That it is not shown that any lumber on the yard, or all of it, could not have been sold for cash, in the ordinary course of business and otherwise than at forced sale, and, in the absence of satisfactory evidence to that effect, it must be presumed to have the value attributed to it by the assessing authorities, which value, so far as the record shows, was but remotely, if at all, affected by what may have been the value in the tree, or what it may have cost to put the lumber on the yard. Thus plaintiff may have bought thousands of acres of stumpage years ago, at a price which would now be considered ridiculously low, and with large means and approved appliances may put its lumber, rough and dressed, on its yard at much less cost than its neighbor, who has bought his stumpage of late years, at a higher price, and, because of his operating a smaller and less efficient mill, is subjected to greater expense in putting it on his yard; and yet the lumber of the one is worth no more, on the yard, than that of the other, and the one may make a profit and the other a loss, in selling at the market price.

(3) That Mr. Muth's testimony shows that, "of the lumber that goes in plaintiff's yard, possibly 65 per cent. is sold in the form of boards and dimensions," and "the *other 35 per cent. of the rough lumber*" (our italics)

practically all of it, is manufactured into ceiling, flooring, drop siding, car lining, case molding, or any of the several hundred products of our [the] plant." That Mr. Muth further testifies as follows:

"Q. What do you get for this lumber that is on the yard? A. We do not sell it in that form. Q. You do not sell any of it in the rough? A. We sell none of it in the form that it is on the yard."

That as the witness designates 65 per cent. of the lumber put on the yard as "boards and dimension," and says that it is sold in that form, and refers to "the other 35 per cent. of the rough lumber," and says that practically all of it is manufactured into ceiling and other products before being sold, we should infer that all the lumber is put on the yard in the form of rough lumber, and that 65 per cent. is sold in that form, and we find some difficulty in reconciling, with that testimony, the subsequent statement to the effect that plaintiff sells no lumber in the form in which it is put on the yard. Let us suppose, however, that by "boards and dimension" the witness means boards, sills, studding, joists, etc., which may be, and generally are, used without being dressed, but that dressing may be added, and dimensions altered, for the filling of particular orders, as, for instance, sills may be planed on one side, or studding may be cut into 8-foot, instead of 16-foot, lengths, or, as in the case of "the other 35 per cent. of the rough lumber," more elaborate dressing or cutting may be added, and, as the witness admits, the lumber becomes marketable, and is sold: What, then, is the situation? It is that the seller fixes a price, by adding the cost of the work done upon the rough lumber, plus a profit, to the value of the lumber in its rough state, plus a profit, which presupposes a value to which such additions are made, and which is as well known before the

additions as is the combination of values afterwards.

(4) That Mr. Muth testifies that plaintiff is in business to make money, and there is nothing in the record to show that other persons or corporations operate sawmills for any other purpose, from which we conclude that, if plaintiff's property is valued at cost, less 35 per cent., it would not be willing to sell it, and could not replace it, at that valuation, and hence that from no point of view can it be regarded as the valuation contemplated by law for the purposes of taxation.

(5) And, finally, the reply of the witness, "We do not sell it in that form," to the question, "What do you get from the lumber that is on the yard?" is not an answer to the real inquiry, conflicts with testimony previously given, and fails to negative either the idea of value in the lumber so situated or the fact that such value was determined or susceptible of being determined.

The case of Greene v. Louisville & I. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, deals with a question of discriminatory and unequal taxation, which is not mentioned in the pleadings in this case, and to which the only reference to be found elsewhere in the transcript is the following statement in the testimony of Mr. Muth, to wit:

"From that value, because of a statement of Mr. Thomas, of the state board of affairs, made in Alexandria, that, in making assessments on stocks of merchandise, the state board had practically adopted the policy of using invoice values, less discount of 25 per cent., we considered that lumber was as much merchandise as any other article of commerce, and, using the same theory, we took 25 per cent. from what we had considered was our cost, arriving at our rendered valuation."

It does not appear whether the witness heard Mr. Thomas make the statement thus attributed to him, whether he was told so by some one else, or whether he read it in a newspaper; and, we do not find in the testimony a sufficient basis for the assumption that the state board assesses stocks of merchandise otherwise than as contemplated by law. Our understanding of the mercantile business is that it consists largely of transporting commodities from a place where they are less valuable to a place where they are more valuable, and that the pocketing of the difference, less the cost of the transportation, etc., is the purpose for which such business is conducted. But the cited case, we think, is inapplicable here, and equally so do we find the Swift and Cudahy Cases, 115 La. 322, 38 South. 1006; 115 La. 325, 38 South. 1008, to which we are referred.

[3] It has long been settled in the jurisprudence of this state, and of other jurisdictions, that the assessment of property for taxes and the modes adopted for determining its value will be presumed by the courts to be correct, until the taxpayer makes satisfactory proof to the contrary. Cotton Exchange v. Board, 37 La. Ann. 424; City of New Orleans v. Louisiana S. Bank, 31 La. Ann. 826; City of N. O. v. N. O. Canal & B. Co., 29 La. Ann. 851, affirmed in 99 U. S. 97, 25 L. Ed. 409; Vicksburg S. & P. R. Co. v. Assessors, 38 La. Ann. 760; Pons v. Board, 118 La. 1103, 43 South. 891; 27 Cyc. 1128–1135. In this case, the taxpayer has made no such proof.

It is therefore ordered and decreed that the judgment appealed from be set aside, the injunction herein issued dissolved, the assessment complained of sustained and that there be judgment in favor of R. E. Oden, the tax collector, as provided by section 16 of Act 140 of 1916, and against the plaintiff, for 10 per cent. of the amount of the taxes involved herein, to be collected by said tax collector and paid over when said taxes and penalties are collected. It is further decreed that plaintiff's demands be rejected, and this suit dismissed, at its cost.