No. 3848

**Second Circuit**

———

BAKER-LAWHORN & FORD, INC., v.
LOUISIANA TAX COMM. ET AL.

———

(November 7, 1930.  Opinion and Decree.)

———

Barnette & Roberts and Chris Barnette, of Shreveport, attorneys for plaintiff, appellee.

Robert J. O'Neal, of Shreveport, attorney for defendants, appellants.

WEBB, J.  Plaintiff, Baker-Lawhorn & Ford, Inc., a corporation engaged in the wholesale grocery business in Caddo parish, La., brought this action against the Louisiana tax commission and the taxing authorities of Caddo parish to obtain a reduction on the assessment for the year 1929 on a stock of merchandise from $50,-480 to $41,700, and, on trial the assessment being reduced to $42,064, defendants appeal.

The evidence shows that plaintiff had taken three inventories of the merchandise carried during the preceding year, showing the inventory value as $50,728 on January 1st, $57,047 on July 1st, and $60,-428 on December 31st; and plaintiff took the mean amount of the inventories, or $56,086, as the inventory value of the average stock of merchandise carried during the year 1928, from which a deduction of $14,386, or 25.64 per cent was made, and it appears from the judgment that the court

accepted the amount of $56,086 as the inventory value of the average stock of merchandise carried by the plaintiff during that year, from which a deduction of $14,042, or 25 per cent was made.

Appellants urge that under the evidence the inventory value of the average stock of goods carried by plaintiff was $60,428, and that the evidence did not warrant any deduction to be made from that amount, and, the presumption being that the assessment as made was correct, it should stand.

In presenting the cause here appellants state that, in assessing mercantile concerns, the assessment of the merchandise must be based upon the average amount of merchandise carried, which is conceded by appellee; but appellants contend there is not any decision holding that the mean amount of the inventories taken during the preceding year should be accepted as the inventory value of the average amount of merchandise carried during the year for which the assessment is made, and that, where a claim for reduction of assessment is made on the theory that the mean of the inventories taken during the preceding year shows the inventory value of the average amount of merchandise carried, the burden of proof is on the plaintiff to establish that such mean amount correctly evidences the inventory value of the average stock of merchandise carried, and that, where a deduction is sought to be made from the inventory value, it must be shown that the merchandise will not sell for the inventory value in the ordinary course of business, and further that, where a deduction is made on a percentage basis, it is incumbent on the plaintiff to show with some degree of certainty the percentage of reduction.

It is conceded that the assessment as made is presumed to be correct (Bowman-Hicks Lumber Co. v. Reid, 169 La. 905, 126 So. 232; Mackay Telegraph Co. v. Board of State Affairs, 149 La. 397, 89 So. 249; Industrial Lumber Co. v. Oden, 147 La. 760, 85 So. 901), and, although there is not any decision cited in which it has been expressly held that the mean amount of the inventories taken in the preceding year must be taken as showing the inventory value of the average stock of merchandise carried during the year the assessment is made, there are several cases where the assessment has been based upon the mean amount of such inventories (Swift & Co. v. Board of Assessors, 115 La. 322, 38 So. 1006; Cudahy Packing Co. v. Board of Assessors, 115 La. 326, 38 So. 1008), but we are of the opinion that the mean amount of the inventories is merely evidence of the inventory value of the average amount of merchandise carried, and that, where the evidence shows such mean amount is more or less than the average amount of merchandise carried, neither the taxing authorities nor the tax debtor is bound thereby (Peden Iron & Steel Co. v. Louisiana Tax Commission, 163 La. 103, 111 So. 614).

In the present instance the evidence shows that the amount of the inventory of date December 31, 1928, or $60,428, was carried on the statement of the assets and liabilities of the plaintiff as of date January 1, 1929, and with reference to that inventory the testimony of the president of the plaintiff company was as follows:

"Q. Is the merchandise on hand on January 1st the normal amount that you carry or lower or higher at that particular time?

"A. It is lower. * * *

"Q. And the amount that you have on

hand on January 1st is always less than the average carried during the year?

"A. I believe it is."

We are of the opinion that the evidence shows the mean amount of the inventories did not correctly show the inventory value of the average amount of merchandise carried by plaintiff, and that the amount as shown by the last inventory, or $60,428, was nearer correct, and should have been taken as the inventory value of the stock to be assessed, and that any deductions to be made must be taken from that amount.

And the further question to be considered is whether or not the evidence establishes that the actual cash value of the merchandise is less than $50,480, the amount at which it was assessed.

It is clear from the evidence that plaintiff, in arriving at the actual cash value of the merchandise, made a deduction of approximately 25 per cent, from the inventory value; and, in support of the correctness of such percentage of reduction, four witnesses were called, one of whom stated that the wholesale grocery business with which he was connected had recently liquidated another similar business, and that there was a loss of 17.3 per cent on the inventory value, that he thought the depreciation in such a stock of merchandise would be about 10 per cent, and that if sold in globo, the loss would be 20 per cent; another said that the depreciation would be about 10 per cent and the loss about 20 per cent if the concern discontinued business and sold the stock in the orderly course of business; while the other two stated the stock was not worth more than 75 per cent of the inventory value, apparently basing their estimate on the depreciation in the merchandise.

The parties conceded that the merchandise must be assessed at its actual cash value, and that the actual cash value is the price at which it would sell for in cash in the ordinary course of business (article 10, sec. 1, Constitution of 1921; section 6, Act No. 170 of 1898; Peavy-Wilson Lumber Co. v. Jackson, 161 La. 669, 109 So. 351), and, considering the provision in section 7, Act No. 170 of 1898 (revenue and taxation statute), which reads: "That in assessing mercantile firms the true intent and purpose of this act shall be held to mean, the placing of such value upon the stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, etc., as will represent in their aggregate a fair average on the capital, both cash and credit, employed in the business," with the provision in paragraph 6 of section 91 of the same statute that "the words 'actual cash value' * * * shall be held to mean a price that any piece of real estate or personal or movable property would sell for cash in the ordinary course of business," etc., we are of the opinion that any reduction from the inventory value of the merchandise should be based upon the value the merchandise would sell for if the business was continued and the merchandise sold to the customers of the business in the ordinary course.

With the exception of one of the witnesses, it does not appear that any of them had ever kept any memoranda of the loss which would be sustained on the inventory value of a given stock of merchandise when sold; and, while he states the loss was 17.3 per cent, it was not shown what was the condition of the merchandise, that is, whether or not the stock had been kept up prior to the time it was taken over by the concern with which the witness was connected, or how long the concern whose business was liquidated had been in busi-

ness; but, conceding that the price received, or 82.7 per cent of the inventory value, was some criterion of the price at which the stock of merchandise would sell, the evidence shows that the taxing authorities assessed the stock of merchandise of plaintiff at 83.5 per cent of its inventory value, and any reduction on a percentage basis being clearly merely an approximation, we do not think that, assuming the taxing authorities based the reduction on a percentage basis, tne evidence was sufficient to overcome the presumption that the assessment as made was correct.

We do not hold that it is impossible for the actual cash value of a stock of merchandise, such as that carried by plaintiff, to be fixed by a deduction of a certain percentage from the inventory value (although it appears that two of the witnesses called by plaintiff were of that opinion), as it may be that persons who have been connected with a business for a long period of time would be able to make an estimate of the percentage of loss on the inventory value of a stock of merchandise where the stock was not kept up and sales made to the customers. in the ordinary course of the business; but, considering that the basis of the assessment is the inventory value of the merchandise, from which a deduction on a percentage basis is to be made, to cover the loss over a period of one year, it is clear, we think, that the principal factor to be considered is the depreciation in the merchandise, which two of the witnesses said would not exceed 10 per cent, and clearly from that point of view the evidence does not establish that the assessment was excessive.

It is therefore ordered that the judgment appealed from be avoided and reversed, and that plaintiff's demands be rejected at its cost.