18 So.2d 496

F. STRAUSS & SON, Inc., v. COVERDALE, Assessor, et al.

No. 37143.

May 22, 1944.

Eugene Stanley, Atty. Gen., W. D. Goff, First Asst. Atty. Gen., and S. L. Digby,

City Atty. and Geo. W. Lester, Dist. Atty., both of Monroe, for defendants and appellants.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellee.

HAMITER, Justice.

F. Strauss & Son, Inc., a Louisiana corporation and the plaintiff herein, is and has been for sometime engaged in the wholesale produce and liquor business at its domicile in Monroe, Ouachita Parish, Louisiana.

For the year 1942, its merchandise and stock in trade, based on an average inventory for 1941, was assessed for ad valorem taxation purposes by the tax assessor of Ouachita Parish at $76,860. But on a review of the assessment the Louisiana Tax Commission ordered an increase of $36,000, thus raising it to the total of $112,860, this added amount representing the cost of the federal and state revenue stamps borne by the containers of the liquor stock and paid for by the wholesaler, as required by the federal and state statutes. That agency, in this connection, concluded that the cancelled stamps formed a part of the value of the liquor on hand in view of the fact that payment of both state and federal taxes was necessary before the product could be sold to the retailer.

Following the issuance of the order the wholesaler brought this suit against the Louisiana Tax Commission, the Assessor and the Tax Collector of Ouachita Parish, and the Tax Collector of the City of Monroe, praying that the increase in its assessment for 1942 be decreed incorrect, illegal and void and that it be stricken and removed from the assessment roll.

There was judgment in accordance with plaintiff's prayer, and defendants are appealing.

The single question presented by the controversy is whether or not the mentioned state and federal revenue stamps are to be considered in valuing the liquor for assessment purposes.

An agreed statement of facts, on which the case was tried, discloses that "prior to the year 1940, the Louisiana Tax Commission did not include in the assessed value of whiskey the amount of federal and state tax stamps attached thereto, but during the year 1941 the Tax Commission adopted the policy of including in the assessed value of alcoholic beverages the amount of federal and state taxes affixed to same. This was not put into effect completely, however, until the year 1942."

It was also agreed by counsel as follows: For conducting its wholesale liquor business, plaintiff purchases both bulk and case liquors. Before it receives either, however, the federal tax thereon has been paid and stamps evidencing that payment have been affixed to the containers by the distiller. Reimbursement for the tax thus paid, pursuant to the distiller's billing of that obligation as a separate item, is made by plaintiff. Upon arrival, the liquor is stored by the wholesaler in one of its warehouses. There it remains until its sale is desired, at which time the liquor is withdrawn, state revenue stamps are attached to the containers and cancelled, and it is placed in another warehouse. The state stamps are

purchased by the wholesaler from the Louisiana Department of Revenue and are non-transferable.

Article X, Section 1, of the Louisiana Constitution of 1921, as last amended by Act No. 81 of 1934, provides in part: "The power of taxation shall be vested in the Legislature; * * *. No property shall be assessed for more than its actual cash value, ascertained as directed by law, * * *." Somewhat similar provisions were contained in the Constitutions of 1898 and 1913.

According to the statutory law of this state, "It is made the duty of the tax assessors throughout the state to place upon the assessment list all property subject to taxation, including merchandise or stock in trade within their respective districts or parishes; and in the assessment of merchandise, or, stock in trade on hand during the year preceding the calendar year in which the assessment is made, *the inventory value of such merchandise, etc., shall be arrived at by computing the cost or purchase price of said shipment at the point of origin, plus the carrying charges to the point of destination, and the average value arrived at as above required shall be the basis for fixing the assessable value,* * * *." Acts 1898, No. 170, section 7, 1932, No. 78, section 1, Dart's, section 8328.

"All real estate and personal property subject to taxation * * * shall be estimated by the assessors * * * at its actual cash value * * *." Acts 1898, No. 170, section 20, Dart's, section 8341.

"The words 'actual cash value,' or 'actual cash valuation', shall mean the valuation at which any real or personal property is assessed for the purpose of taxation, after the assessing authorities have considered *every element of value* in arriving at such valuation. And the price at which any piece of real estate or personal or movable property shall have been sold for cash in the ordinary course of business, free of all encumbrances, otherwise than at forced sale, *shall be evidentiary only, and to be considered with other factors* in determining the actual cash value for assessment purposes." Acts 1898, No. 170, section 91, subd. 6, 1902, No. 130, section 5, 1934, No. 126, section 1, Dart's, section 8200.

Inasmuch as our Constitution states that the ascertainment of the property's actual cash value for assessment purposes is to be as directed by law, and as the statute law above quoted (Section 7 of Act No. 170 of 1898, as amended by Section 1 of Act No. 78 of 1932) provides that the inventory value (meaning obviously the actual cash value) of the stock in trade shall be arrived at by computing the cost or purchase price of the shipment at the point of origin plus the carrying charges, it is clear that the cost of the state revenue stamps affixed to the liquor containers by plaintiff is not to be included in the assessment. Those stamps were purchased, affixed and cancelled by the wholesaler after it had received the merchandise.

With that conclusion reached, there is left for consideration the matter of whether or not the cost of the federal revenue stamps, for which the wholesaler was required to make reimbursement to the distiller in obtaining the liquor, is a part of the

purchase price of the shipment and is to be included in its actual cash value.

Counsel for defendant insist that it is a part of the purchase price and must be so included, they arguing that the actual cash value is the amount the merchandise would bring when sold on the regular market. To support this they cite Baker-Lawhorn & Ford, Inc., v. Louisiana Tax Commission, 15 La.App. 189, 130 So. 642, 644, in which it is said that "the actual cash value (of the property) is the price at which it would sell for in cash in the ordinary course of business." When that case was decided (1930) the existing and effective statutory definition of actual cash value was the "price that any piece of real estate or personal property or movable property would sell for, for cash in the ordinary course of business, free of all encumbrances otherwise than by forced sale." Section 91, Act No. 170 of 1898, as amended by Act No. 130 of 1902. But in 1934 the Legislature, by Section 1 of Act No. 126 of such year (above quoted), changed that provision, declaring that in arriving at the actual cash valuation of property the assessing authorities should consider *every element of value,* and that the price at which it shall have been sold for cash in the ordinary course of business shall be *evidentiary only and considered with other factors.*

Now one of the "other factors" to be taken into consideration in the instant matter is that a portion of the cost paid by plaintiff in the purchase of its liquor (that which represents a part of the assessment increase demanded by the defendant Tax Commission, the remaining part being the cost of the state stamps) is clearly a tax levied by the federal government under its revenue laws.

That such portion does constitute a tax is admitted by defense counsel. They contend, however, that plaintiff did not pay the tax; that it was paid by the distiller which in turn raised the price of the product so as to obtain reimbursement, thereby making it merely a part of the purchase price, not a tax passed on to the wholesaler and ultimately to the consumer. In connection with this contention they cite State v. Wilson & Co., Inc., 179 La. 648, 154 So. 636, 638, in which the state sought recovery of a tax of 1¼% of the gross receipts arising from wholesaling, selling and jobbing meat products. Therein the court said:

" * * * The tax is laid on the manufacturer, wholesaler, or jobber, and remains on him. It does not pass to the purchaser of the merchandise, although incorporated in the bill to him, whether it appear on the bill separately or not. The purchaser does not pay the tax, although he may pay the vendor more for the goods, because of the vendor's obligation to pay it, but that is all. Lash's Products Co. v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251; Shearer v. Commissioner of Internal Revenue, 2 Cir., 48 F.2d 552."

The Wilson case and those cited in the opinion of it differ vastly from the one before us. In each of them there was under consideration a percentage tax on the gross receipts of the business; it was a tax, imposed for the privilege of engaging in business, that became confused with and buried in the cost of operations; it was not one

destined to be paid by the ultimate consumer, as here.

They also cite, and rely for success in this case almost entirely upon, a recent case decided by the Supreme Court of Georgia, styled Consolidated Distributors, Inc., v. City of Atlanta, 193 Ga. 853, 20 S. E.2d 421, and which involved facts identical with those of the instant controversy. There the Georgia court reached the conclusion, with which we are unable to agree, that the federal revenue tax should be included as an element in assessing the value of liquor, it reasoning that the tax, since the distiller had paid it, became a part of the purchase price or cost to the wholesale dealer. And to sustain this holding it cited the decisions of Lehman v. Grantham, 1878, 78 N.C. 115, and Williams v. Iredell County Com'rs, 1903, 132 N.C. 300, 43 S.E. 896. These comparatively old North Carolina cases, as we appreciate them, are not analogous. In each the court was considering merely a license tax imposed by the state on the dealer, it being a percentage of the total amount of the dealer's purchases; while involved here and in the Georgia case is the matter of the assessment of liquor at its actual cash value for ad valorem taxation purposes.

The federal revenue statute does not state that there shall be a tax on the distillation or manufacture of liquor; no license for the privilege of distilling or manufacturing that product, predicated on the gross receipts of the distiller's business, is thereby imposed. Rather, the statute provides that there shall be a tax levied and collected on *all distilled spirits*. This, in our opinion, clearly is in effect the imposition

of a purchase or use tax on liquor, with the burden of paying it being placed solely on the ultimate consumer.

That this conclusion is correct is indicated by a number of circumstances. Each package or bottle displays the amount of tax that it bears, this by means of cancelled stamps, and such tax is billed as a separate item when the liquor is sold. Furthermore, with reference to liquor "in bond" the tax is to be paid only when the product is taken from bond, not immediately upon its being manufactured or distilled. Also, we observe that distilled spirits may be withdrawn tax free from industrial alcohol plants or bonded warehouses whenever it is to be used for certain designated purposes, such as in college research work, in hospitals and in charitable clinics. If the tax were on the privilege of distilling, and it remained on the distiller, the withdrawal tax free could not be permitted; the distiller would have to pay the tax and then increase the cost to the user regardless of the intended use of the liquor. Finally, it will be noticed that the Congress, in increasing the tax during recent years, levied what is termed a floor stocks tax on all distilled spirits in the hands of wholesalers and retailers for re-sale, it being proportionate with the increase placed at the same time on the liquor held by the distillers. See 26 U.S.C.A. Int.Rev.Code, § 2800; C. C. H. Liquor Control Law Service, paragraphs 23132b—23132k. Obviously, the imposition of this floor stocks tax is indicative of an intention on the part of the law makers that the levy be a purchase or use tax to be paid by the ultimate consumer, not one imposed on and to be borne

by the distiller for the privilege of distilling.

It is true that the law charges the distiller with the duty of paying the tax on distilled spirits (except the floor stocks tax) to the federal government. But undoubtedly this is done for the sake of convenience, economy and efficiency; a centralized means for making collections is thereby provided. The distillers are few in number, and are more easily controlled, in comparison to the numerous wholesalers and retailers throughout the country. If the government dealt directly with the retailers in its collection of the tax from the consumers, there would result exorbitant costs, a burdensome bookkeeping system, much tax evasion, and many other material hindrances.

Since the federal revenue tax is and remains separate from the cost of the liquor, we must and do hold that the Louisiana Tax Commission is without right to increase the assessment of plaintiff to the extent of the liquor tax paid by it to the distiller, as such agency seeks to do. Such an increase, as we view it, would be, in effect, the imposing of a tax on a tax, and, unquestionably, an act that is reprobated by law and one that is without justification in fact.

Moreover the State's taxing of the federal liquor tax, it seems to us, would constitute an interference by the state with the operation of a federal agency. This cannot be done, as is very forcefully stated by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 436, 4 L.Ed. 579. Therein the State of Maryland was attempting to tax the notes issued by a branch of a national bank established in Maryland. The court said:

"The Court has bestowed on this subject its most deliberate consideration. The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared."

This principle was recognized and reiterated in Weston v. City Council of Charleston, 27 U.S. 449, 7 L.Ed. 481, and State of North Dakota, ex rel. Flaherty v. Hanson, 215 U.S. 515, 30 S.Ct. 179, 54 L.Ed. 307.

Therefore, for the foregoing reasons, the judgment is affirmed.

ODOM, Justice (dissenting in part).

I concur in the view expressed by the majority that the cost of the state revenue stamps affixed to the liquor containers by the plaintiff should not be included in the assessment. But I think the cost of the federal revenue stamps is a part of the purchase price of the liquor and should be included in the assessment. I dissent from that part of the opinion which holds to the contrary.