## No. 16,464.

## CASS, MANAGER OF REVENUE OF DENVER *v*. COLORADO BEVERAGE COMPANY.

(220 P. [2d] 867)

Decided June 19, 1950.   Rehearing denied July 10, 1950.

Mr. J. GLENN DONALDSON, Mr. CHARLES H. HAINES, for plaintiff in error.

Mr. DAVID ROSNER, Mr. WALTER F. SCHERER, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS controversy concerns the assessment for ad valorem taxes of a stock of merchandise consisting of distilled spirits. The specific question presented is whether or not the amount paid for state and federal excise taxes on said spirits should be included in the assessor's valuation. The trial court found that such excise taxes should not be so included, and the assessor seeks reversal of the judgment on writ of error.

Sections 54 and 55, chapter 142, '35 C.S.A., as amended by chapter 158, S.L. '43, and quoted, in so far as here material, in *Denver v. Hover Motors,* 121 Colo. 439, 217 P. (2d) 863, require that all stocks of merchandise shall be assessed as of March 1 of each year on the average amount of money and credits invested in such stocks of merchandise during the preceding twelve months, in accordance with the following statutory formula contained in section 54, supra, as amended, to wit: "In ascertaining the amount of moneys of any taxpayer invested in merchandise or in manufactures, the assessor shall ascertain the average amount during the fiscal year for which the tax is to be levied; and the average amount of money invested in such merchandise or manufactures during twelve months ending with the last day of February of such fiscal year shall be taken as a true measure of the value of such merchandise or manufactures for such fiscal year."

Defendant in error is a wholesale dealer in distilled spirits, and purchases all of his stock from distillers located outside the State of Colorado. Stocks of liquor, like other merchandise, are assessed, and the value for assessment purposes ascertained and determined in conformity with the provisions of the above statute. *Bedford v. Sinclair,* 112 Colo. 176, 147 P. (2d) 486.

Title 26 U.S.C.A., §2800, provides for the levying and collection of an excise tax upon all distilled spirits in bond, and provides that such tax shall attach to such

spirits as soon as they come into existence, and is payable when such spirits are withdrawn from bond. In practice, as the parties hereto agree, defendant in error was required to remit to the distiller the amount of said federal tax before the spirits were withdrawn from bond. The federal statute makes it unlawful for any person, other than a bonded distiller, to have in his possession in the United States distilled spirits which do not have a United States internal revenue stamp, evidencing payment of said tax, attached to the immediate container.

Section 38, chapter 89, '35 C.S.A., imposes an excise tax upon all malt and vinous liquors sold, offered for sale, or used in this state, to be paid by the first licensee receiving such liquors, if shipped from without the state. Said first licensee is made primarily liable for such tax. The state tax thus imposed becomes a lien upon entry of the liquor into the state. It is by statute made unlawful for any person to sell or offer for sale any alcoholic liquor in Colorado unless stamps evidencing payment of the state tax are attached to the container.

The specific question here involved is whether or not sums paid on account of the federal and state excise taxes constitute moneys "invested in merchandise" within the purview of the taxing statute. The wholesaler contends that such sums so paid on account of said taxes cannot lawfully be included in the value of the liquor for state ad valorem taxation purposes, while the assessor contends that the amount so paid for taxes constitutes an element in the cost and value of liquors, and should, therefore, be included in the value of such liquors for ad valorem taxation.

The above question has been determined adversely to the contention of defendant in error in *Lash's Products Co. v. United States*, 278 U. S. 175, 49 Sup. Ct. 100, 73 L. Ed. 251. That court, speaking through Justice Holmes, said: "This tax was paid by the petitioner,

calculated at ten per centum of the sum actually received by it for the goods sold. But the petitioner had notified its customers beforehand that it paid the ten per cent. tax and it contends that in this way it passed the tax on and that the true price of the goods was the sum received less the amount of the tax. The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. *Heckman & Co. v. I. S. Dawes & Son Co.*, 12 F. (2d) 154. The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all. Still the question as to the meaning of the statute remains.

"The petitioner supports its position by a regulation of the Commissioner that when the tax is billed as a separate item it is not to be considered as an increase in the sale price. Naturally a delicate treatment of a tax on sales might seek to avoid adding a tax on the amount of the tax. But it is no less natural to avoid niceties and to fix the tax by the actual price received. Congress could do that as properly as it could have added one-tenth to the tax on the price as fixed by the other items determining the charge to the buyer. The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price, * * *."

The supreme court of Georgia in *Consolidated Distributors, Inc. v. City of Atlanta*, 193 Ga. 853, 20 S.E. (2d) 421, in disposing of the same question, said: "Such taxes, even though they may in effect have been 'passed on' ultimately to the purchaser by an increase in the purchase-price covering the amount of tax, were an element of cost, first to the dealer and then to the purchaser, by this increased amount which each was required to pay. In determining the cost to the dealer, it is immaterial whether he or the manufacturer paid the stamp tax under the arrangement between them, since in either event the amount paid became part of

the actual cost to the dealer. Since the City of Atlanta was authorized under its charter to levy and collect 'an ad valorem tax on all * * * personal property' (Ga. L. 1874, p. 122, §25), which amount would ordinarily be based on the true market value in the usual course of trade (Code, §92-4101; 26 R.C.L., §323), and since in ascertaining such value every fact and circumstances bearing thereon should be considered (State ex rel. Gilbert v. Halliday, 61 Ohio St. 352 (56 N.E. 118, 49 L.R.A. 427), and since liquors on sale without payment of the tax required to make a sale lawful would be illegal and valueless in the ordinary course of trade, but their value would be augmented to the extent of such a paid tax, the city in this case was authorized to require that such taxes, increasing to that extent the cost to the dealer, should be included as an element in assessing the value of the liquor."

The same question was presented to the Ohio supreme court in *Gruen Watch Co. v. Evatt,* 143 Ohio St. 461, 55 N.E. (2d) 794, where the taxpayer claimed a deduction from his ad valorem tax on manufacturing inventory on account of import duties paid upon watch movements and parts. In upholding the tax commissioner in refusing to deduct such import duties from the value of the manufacturing inventory the supreme court of that state said:

"The standard fixed by the statute is 'the then true value of such property in money.' These watch movements and parts had been transported from Biel, Switzerland, to Cincinnati, Ohio, and it cannot be maintained that their value was unaffected by the expenses of transportation, duties and incidental charges paid thereon. In the case of *Lehman v. Grantham,* 78 N. C. 115, the court held that the federal tax on liquors was not deductible in the assessment of a liquor purchase tax, and said: 'Property is always taxed at its improved value, if it is improved and by whatsoever means improved.' "

In *Greenbros, Inc. v. Evatt,* 9 Ohio Supp. 87, 24 Ohio Opinions 283, where the same contentions were made, in disposing of the controversy it was said: "As to this contention it may be observed that although as a matter of conventional arrangement with the distiller of the whiskey and brandy or as a requirement in getting such distilled spirits out of bond, the appellant may have paid the federal taxes on the production of such distilled spirits, the fact remains that the primary incidence of the tax was on the distiller, 6 A., F.C.A., Title 26, Section 1150, or, in a sense, on such distilled spirits as such, United States v. Rizzo, 297 U. S. 530. In this view as to the federal taxes on the production of the whiskey and brandy as distilled spirits, whether such taxes were paid by the distiller and charged to the appellant as a part of the sale price thereof, or whether such taxes were paid by the appellant as a part of the sale price of the property, such taxes were incorporated in and as a part of the value of the property in the hands of the appellant. And aside from the consideration before noted, that no error is assigned with respect to this question in the appeals filed with the Board of Tax Appeals, we are of the view that the tax commissioner rightly determined the true value of this property in money although there may have been included in such true value the federal taxes on the production of the property as distilled spirits. * * * The federal tax in such case would be as much a part of the true value of this property in the hands of the appellant as duties and charges paid by a merchant on goods imported by him would be a part of the true value of such goods on the shelves in the merchant's storeroom."

The court of appeals of Maryland on January 12, 1950, reached the same conclusion in *Pierce & Hebner, Inc. v. State Tax Commission, et al.,* 71 A. (2d) 6 (Md.), after a thorough review of most of the previous decisions on the question. It is there said:

"This assessment was made pursuant to the pro-

visions of Code (1947 Supplement) Article 81, Section 6, (6), providing for the assessment of 'the stock in business of every * * * corporation engaged in any * * * commercial business in this State * * *' and Article 81, supra, Section 10 (b) (5), providing for the assessment of 'Tangible personal property belonging to any [ordinary business] corporation, domestic or foreign.' By the provisions of Article 81, (1939 Code), Section 11, this property should be assessed 'at the full cash value thereof.' By Title 26 U.S.C.A. §2800 (a) (1) and by the War Tax Act, Title 26 U.S.C.A. §1650, a tax of $9 is levied on each approved gallon of distilled spirits produced in the United States. By Title 26 U.S.C.A. §2800 (b), this tax is to be paid by the distiller when the spirits are withdrawn from bond. Without the federal stamps the distilled spirits could not be sold, and the stamps remain on the bottles until the spirits reach the ultimate consumer.

\* \* \*

"We are of the opinion that 26 U.S.C.A. §2800 (c) is a complete answer to appellant's contention and characterizes the tax here in question as one on the privilege of manufacturing the distilled spirits. That section provides: 'Tax. (c) Time of attachment. The tax shall attach to distilled spirits, spirits, alcohol or alcohol spirit, within the meaning of subsection (b) of section 2809, [Distilled spirits], *as soon as this substance is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process.*' (Italics supplied here). The tax on cigarettes is to be paid by the manufacturer. Here also the tax is to be paid by the distiller. 26 U.S.C.A. §2800 (b) (2). As the tax here in question is imposed on the spirits as soon as it is in existence as such, we are of the opinion that this is not a use tax * * *, but is one on the privilege of manufacturing the spirits. As

found in the case of Consolidated Distributors Inc., v. City of Atlanta, supra, the value of the liquor here in question was augmented to the extent of the tax paid by the distiller and that tax should not be excluded as a part of 'the full cash value.'"

Defendant in error relies upon *F. Strauss & Sons, Inc. v. Coverdale,* 205 La. 903, 18 So. (2d) 496, in support of its contentions. While the court in that case was called upon to construe a statute of that state somewhat different from that here considered, we, after careful study, are unable to agree with the conclusions there reached, and the reasons advanced therefor.

From the foregoing it is clear that distilled spirits cannot be sold in Colorado without the payment of both the federal and state excise taxes; that the amount of such taxes should be considered as a part of the cost of said distilled spirits; that the value of said stock is enhanced by the payment of said taxes; and that the amount so paid constitutes money invested in merchandise within the purview of the taxing statutes.

The judgment of the trial court is accordingly reversed and the cause remanded with instructions to enter judgment for plaintiff in error in harmony with the views herein expressed.

MR. JUSTICE MOORE and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE MOORE dissenting.

I am unable to agree with the majority opinion in this case, the effect of which is to permit the assessment of an advalorem tax upon the moneys expended in payment of excise taxes paid to the Government of the United States and the State of Colorado. The excise tax imposed by the United States Government upon distilled spirits is a maximum of $9.00 per gallon, and a similar tax levied by the State of Colorado is $1.60 per gallon.

In order to validate an ad valorem tax upon these federal and state taxes, the majority opinion concludes

that the payment of the excise taxes amounts to the investment of moneys in merchandise, under chapter 142, section 54, '35 C.S.A. The said statute provides: "In ascertaining the amount of moneys of any taxpayer, or the moneys by such taxpayer *invested in merchandise or in manufactures,* the assessor shall ascertain the average amount during the fiscal year \* \* \*." (Italics ours.) The opinion, in effect, holds that this "investment" in taxes is subject to the payment of this ad valorem tax.

It is my belief that an excise stamp placed upon liquor is simply evidence of a tax already paid and represents no investment whatever "in merchandise or in manufactures," but in fact represents only the payment of taxes which government levies for its own support. The excise stamps are receipts for taxes paid and should not be made the basis for increasing the valuation of the merchandise itself for purposes of ad valorem taxation. Although it is true that the payment of the tax by the dealer must of necessity be taken into account in determining a price for which the liquor may be sold at a profit, this fact does not in any manner change the character of the investment originally made when the excise taxes were paid. The payment of taxes does not amount to an investment in merchandise. I consider it manifestly unfair to countenance increased ad valorem taxes by adding, to the actual value of the merchandise itself, the amount of excise taxes paid thereon.

Stripped to its essentials, the majority opinion approves a tax upon a tax, or a property tax assessed against the amount paid out of pocket in the form of an excise tax. To this result I cannot give assent.

I am authorized to state that Mr. Justice Holland concurs in this dissent.